| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| NEW HANOVER COUNTY | 21 CVS _____ |

FILED
2021 SEP 14 AM 11:42
NEW HANOVER CO., C.S.C.
BY_____

WILMINGTON CONVENTION HOTEL, LLC

    Plaintiffs,

v.

NAVIGATORS SPECIALTY INSURANCE COMPANY,

    Defendant.

**COMPLAINT**
(Jury Trial Demanded)

A TRUE COPY
CLERK OF SUPERIOR COURT
NEW HANOVER COUNTY
BY: *Ryoko Hagiwara*
Deputy Clerk of Superior Court

Plaintiff Wilmington Convention Hotel, LLC, complains and alleges as follows:

## PARTIES

1. WCH is a limited liability company duly organized and existing under the laws of the State of Virginia that does business throughout North Carolina, including in New Hanover County.

2. Defendant Navigators Specialty Insurance Company ("Navigators") has its principal place of business in New York.

3. This Court has personal jurisdiction over Defendant pursuant to N.C. Gen. Stat. § 1-75.4.

4. This Court is the proper venue for this action pursuant to N.C. Gen. Stat. § 1-80.

## FACTS

5. WCH owns and operates the Embassy Suites located at 9 Estell Lee Place, Wilmington, North Carolina (the "Hotel"). Construction of the Hotel was completed in or around March 2018.

**EXHIBIT B**

6. Navigators issued a commercial property insurance policy to WCH insuring the Hotel (No. NY17HAB0BH66XNC) (the "Policy"). The effective date of the Policy was December 29, 2017 to December 29, 2018. The Policy includes, *inter alia*, coverage for the repair and replacement of real and personal property damage and for lost business income.

7. Hurricane Florence made landfall near Wilmington on September 14, 2018, dumping more than 26 inches of rain on the area over several days. The Hotel experienced massive amounts of water intrusion, damaging its ballroom, meeting spaces, guest rooms, and other common areas. There was also significant wind damage to the roof, rooftop HVAC units, and rooftop bar area. WCH lost business income while the damages to the Hotel were being repaired.

8. A significant portion of the water damage that occurred during Hurricane Florence was the result of damage to the roof when HVAC units, other fixtures, and rooftop railings were blown off, creating openings in the roof membrane and allowing water to pour directly into the Hotel.

9. After Hurricane Florence passed, WCH promptly notified Navigators of its claim (claim number HAB308834) for coverage under the Policy.

10. Navigators, through its personnel and agents,, behaved as if it would fully cover the claim. WCH relied on Navigators' guidance on how to remediate the damage. Rather than simply remove and replace water soaked carpets and drywall, Navigators insisted that WCH hire a restoration company to perform drying operations, which not only ultimately was more expensive, but also which required the Hotel to partially shut down for an extended period of time.

11. The restoration company charged over $1.2 Million for its services. WCH also incurred cost for storm related repairs, furniture, fixture and equipment replacements and lost additional business income due to the need to partially shut down.

12. On October 15, 2018, WCH provided Navigators with various repair estimates and opinions from roofing and plumbing contractors and an architect in support of its claim for coverage under the Policy.

13. WCH also retained a professional engineering firm at its own expense. The engineers retained by WCH confirmed that water intrusion occurred along the northern elevation of the building—below the roof that sustained obvious wind damage, allowing water to enter the building and damage the interior spaces below it.

14. These and other statements and reports were obtained by WCH and provided to Navigators throughout the time Navigators was adjusting the loss. WCH's submissions established that water damages at the Hotel were not caused solely by wind-driven rain or discharge from sewer, drain or sump. WCH's expert contractors and engineers demonstrated to Navigators that WCH's significant property and business income losses were also caused by other covered perils, namely windstorm/hail.

## Navigators' Wrongfully Denies Coverage

15. In a letter dated October 21, 2019—more than one year after WCH's claim was made—Navigators provided its analysis of WCH's coverage under the Policy and stated it was reserving all rights under the Policy (the "ROR Letter"). A true and correct copy of the ROR Letter is attached hereto as Exhibit A.

16. Navigators concluded—despite overwhelming and competent evidence to the contrary—that <u>all</u> of WCH's losses and damages were caused by either (a) wind-driven rain

entering through window openings or (b) discharge from a sewer, drain, or sump causing water damage to the interior from the roof. The ROR Letter failed to identify specific factual support and Policy language to support its coverage position.

17. While the Policy's limit of liability was $10,000,000 per occurrence, the Policy sublimits coverage for direct physical damages to only $250,000 for wind-driven rain and $100,000 for discharge from a sewer, drain, or sump.

18. Navigators acknowledged that it owed for direct damages caused by discharge from a sewer, drain, or sump. Regardless, Navigators wrongfully refused to pay the $100,000 sublimit under that coverage, stating in an October 21, 2019 letter that "[b]ecause the Deductible Buy Back Carrier has paid the full $100,000 recoverable for Discharge from Sewer, Drain, or Sump, no further recover is available for that loss." Navigators failed to cite to any provisions of the Policy or provide any other reasonable explanation for its refusal to pay coverage it acknowledged was due.

19. There are no provisions in the Policy that allow Navigators, as the primary insurer for the losses sustained by WCH, to offset its contractual coverage obligations with a separate deductible buy-back policy obtained by WCH for the sole benefit of WCH.

20. The Policy also contains a scrivener's error in that it fails to show a limit of liability for Business Interruption in the Schedule to the Discharge from Sewer, Drain or Sump endorsement. Upon information and belief, WCH paid for this coverage as part of its premium.

21. Navigators also took the position that the $250,000 policy limit on wind driven rain coverage is a limit for all direct and indirect losses, meaning it applies to WCH's business interruption coverage. This interpretation was based on a strained reading of the Policy and contrary to the plain language and the parties' intentions. At best for Navigators, the terms

regarding business income coverage for losses caused by wind-driven rain are ambiguous and should be construed to provide coverage for WCH's losses.

22. Other coverages for WCH's commercial property and business income are owed under the Policy, including coverage for windstorm/hail that resulted after areas of the roof were damaged by wind. The windstorm/hail coverage, for example, is not subject to the various sublimits that Navigators relied on in bad faith to severely underpay and deny all covered losses owed under the Policy.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

23. The allegations contained in Paragraphs 1-22 are incorporated by reference as if fully set forth herein.

24. The Policy is a valid and enforceable contract.

25. At all times, WCH has complied with all terms and conditions for coverage under the Policy.

26. Navigators has refused to pay all sums owed under terms and conditions of the Policy for WCH's property damage and business income losses.

27. The actions of Navigators, including its refusal to pay the coverage due to WCH, constitute a breach of contract.

28. As a result of the breach of contract by Navigators, WCH is entitled to compensatory damages in excess of $25,000, plus interest and attorneys' fees as allowed by law.

## SECOND CAUSE OF ACTION
### (Estoppel)

29. The allegations contained in Paragraphs 1–28 are incorporated by reference as if fully set forth herein.

30. Navigators, through its agents, behaved as if it would fully cover the WCH's claim. For example, Navigators insisted that WCH hire a restoration company to perform drying operations despite the fact that there was a simpler alternative: removing and replacing water soaked carpets and drywall.

31. WCH relied on Navigators' guidance on how to remediate the damage, believing that Navigators would cover its claim.

32. The drying operations, insisted upon by Navigators, required WCH to incur costs that exceeded what the cost of replacement of damaged materials would have been, as well as to partially shut down the Hotel for an extended period of time costing WCH revenue.

33. Through their actions, Navigators represented to WCH that it would cover WCH's claim.

34. WCH reasonably relied on that representation.

35. WCH reliance on Navigator's representation was to its detriment.

36. For these reasons, based on Navigator's conduct, Navigators should be equitably estopped from denying coverage.

**WHEREFORE**, WCH respectfully prays the Court:

1. Award WCH actual damages against Navigators in an amount to be proven at trial but reasonably believed to be in excess of $25,000, plus interest at the legal rate until paid in full;

2. Tax the costs of this action, including attorneys' fees, against Navigators as allowed by law;

3. Grant a jury trial on all issues so triable; and

4. Grant such other and further relief as the Court deems just and proper.

This the 13th day of September, 2021.

                             _____
                             H. Arthur Bolick II
                               N.C. State Bar No. 20866
                               abolick@brookspierce.com
                             Kimberly M. Marston
                               N.C. State Bar No. 46231
                               kmarston@brookspierce.cm
                             BROOKS PIERCE MCLENDON
                                HUMPHREY & LEONARD, L.L.P.
                             Post Office Box 26000
                             Greensboro, North Carolina 27420
                             Telephone: (336) 271-3170
                             Facsimile: (336) 232-9170
                             *Attorneys for Plaintiff*

# EXHIBIT A
# (October 21, 2019 Letter)



October 21, 2019

Wilmington Convention Hotel, LLC
9 Estell Lee Place
Wilmington, NC 28401

| Re: | Insured: | Wilmington Convention Hotel, LLC |
|---|---|---|
| | Loss: | Water Damage, Hurricane Florence |
| | Location: | Embassy Suites Hotel, 9 Estell Lee Place, Wilmington, NC |
| | Policy No.: | NY17HAB0BH66XNC |
| | Date of Loss: | September 14, 2018 |
| | Claim No.: | HAB308834 |

Dear Sirs:

    I am writing on behalf of Navigators Specialty Insurance Company ("Navigators") to give you Navigators' current analysis of the above water-damage claim.

    This claim arises from Hurricane Florence. During the storm, the subject Embassy Suites Hotel experienced water infiltration in the guest rooms, primarily around the window openings, and also experienced water infiltration in the interior areas below its flat roof.

    Navigators, with the assistance of the independent outside adjuster, building consultant, and engineering consultant, has concluded that the infiltration of water through the window openings represents Wind-Driven Rain, and the infiltration of water below the roof represents Discharge From Sewer, Drain, or Pump, not associated with a flood.

    Navigators has adjusted the property-damage loss associated with this occurrence, subject to applicable sublimits and deductible. We understand that the hurricane deductible applicable has been paid by the deductible buy-back carrier.

    Navigators has applied two relevant sublimits to this loss: Discharge From Sewer, Drain, or Sump and Wind-Driven Rain. These two sublimits are found in endorsements to the Policy.

    The first sublimit is found in the Discharge From Sewer, Drain, or Sump (Not Flood-Related) Endorsement. That Endorsement contains the following Schedule:

| Premises Number | Building Number | Discharge Limit (Property Damage) | Discharge Limit (Business Interruption) | Annual Aggregate Limitation Applies |
|---|---|---|---|---|
| ALL | ALL | $100,000 | | ☐ |

Navigators Management Company, Inc.

194 Wood Avenue South • Iselin, New Jersey 08830 • Tel. (732) 623-5661 • Fax (732) 623-5698
857906.1

The Endorsement provides that Business Interruption recovery is available for a Discharge loss only "If a Discharge Limit for Business Interruption is entered in the above Schedule. There is no Discharge Limit entered for Business Interruption. Therefore, no Business Interruption recovery is available for Discharge losses, and Property Damage recovery is sublimited to $100,000.

Because the Deductible Buy Back Carrier has paid the full $100,000 recoverable for Discharge From Sewer, Drain, or Sump, no further recovery is available for that loss.

The second sublimit is part of the Policy's Wind Driven Rain Endorsement.

That Endorsement applies to "the direct loss due to the action of rain, snow, sand, or dust which enters the building by passing through or passing around building components." It contains this sublimit:

**Sublimit of Liability:** $250,000 Per Occurrence

The entire $250,000 sublimit for Wind Driven Rain coverage under this Endorsement has been paid. Therefore, no further recovery is available for that loss.

Our understanding is that Wilmington Convention has urged that the Wind Driven Rain sublimit should apply only to Property Damage, and not to Business Interruption. This view, however, is not in keeping with either the Endorsement or with the Policy in general.

We point out that coverage for loss from wind-driven rain (except wind-driven rain that enters the building through areas damaged by that wind) does not exist under the Policy except as a result of the Wind Driven Rain Endorsement. Except for that Wind Driven Rain Endorsement, no coverage at all would exist for this part of the claim.

Specifically, the Policy excludes coverage for loss from wind-driven rain (except wind-driven rain that enters the building through areas damaged by that wind) in its "Causes of Loss – Windstorm or Hail" Endorsement. That Endorsement states that no coverage exists for:

Direct Physical Loss or damage to the interior of any covered building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

This exclusion would also negate any Business Interruption coverage for time-element loss arising from wind-driven rain (except wind-driven rain that enters the building through areas damaged by that wind). This is because Business Interruption recovery, under Section A(5)(c)(2) of the Business Income (And Extra Expense) Coverage Form, is available only if the time-element loss is caused by a Covered Cause of Loss. Specifically as to Loss of Rental Value,

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

The "Causes of Loss – Windstorm and Hail" Endorsement excludes wind-driven rain (except wind-driven rain that enters the building through areas damaged by that wind) as a Covered Cause of Loss. Therefore, Business Interruption coverage, which exists only if the time-element loss is caused by a Covered Cause of Loss, would not exist for wind-driven rain, were it not for the separate Wind Driven Rain Endorsement.

In short, the only coverage for time-element loss caused by wind-driven rain (except wind-driven rain that enters the building through areas damaged by that wind), is created by the Wind Driven Rain Endorsement.

The Wind Driven Rain Endorsement, in turn, creates coverage for all "direct loss" due to the action of wind-driven rain. This coverage is not limited to "physical loss"; so, the coverage applies to all losses, both physical and time-element. Indeed, if the Endorsement had created coverage only for "physical loss," then there would be no Business Income coverage at all.

Rather than creating coverage only for physical loss, the Endorsement encompasses all "direct loss." "Loss" is a term that includes both physical damage losses and time-element losses. The Endorsement, therefore, expressly applies to both types of loss.

The Endorsement then imposes a $250,000 sublimit on these losses, "per Occurrence." "Occurrence" is a broad term, meaning all losses arising out of the same cause. It is defined in the Occurrence Limit of Liability Endorsement as follows:

The term "occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters or casualties, arising out of one cause."

An "occurrence," then, is the entirety of all losses that result from one cause. Wind-Driven Rain is defined under the Policy as a separate "Cause of Loss." The $250,000 Per Occurrence sublimit, therefore, applies to all losses arising out of the Wind-Driven Rain, since all such losses constitute a single "Occurrence."

In summary, Navigators has correctly applied the $250,000 per-Occurrence Wind Driven Rain sublimit to all losses arising from the wind-driven rain. The Wind Driven Rain Endorsement is the only source of coverage for both property damage and time-element losses resulting from wind-driven rain in this context. Indeed, if the Endorsement (and its sublimit) did not apply to Business Interruption loss, then there would be no coverage whatsoever for such loss. Rather, the Endorsement does create such coverage, subject to the per-Occurrence sublimit. That sublimit applies to all direct "losses," a term that refers to both property damage and time-element losses. It further applies to the entire "Occurrence," which means all losses arising out of the relevant cause of loss, wind-driven rain.

\*   \*   \*

Navigators Management Company, Inc.

194 Wood Avenue South • Iselin, New Jersey 08830 • Tel. (732) 623-5661 • Fax (732) 623-5698
857906.1

This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Policy, or any other policies of insurance issued by Navigators. Navigators expressly reserves all of its rights under the Policy, including the right to amend and/or add to this letter, and Navigators' efforts in conducting its investigation should not be considered a waiver or variance of any of the Policy's terms of conditions. All rights are reserved.

Finally, please be advised that no representative of Sedgwick, or any other consultant retained by or on behalf of Navigators, has any authority to waive or alter the terms, conditions, or limitations of the Policy. All such rights and coverage decisions are reserved for Navigators exclusively, and the only authorized communications are those conveyed in a writing signed by Navigators or one that expressly states that it is being sent on Navigators' behalf.

If you have any questions or wish to discuss this further, please do not hesitate to contact us.

Very truly yours,

*Jwanjuki*

John Wanjuki, Senior claims Specialist
1(732) 623 5661

cc: Mr. Peter Curnin
All Risks, LTD
3567 Parkway Lane
Peachtree Corners, GA 30092